IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER FORSYTH, an individual and As Administratrix of the Estate of BERTRAM FORSYTH, deceased,<br><br>*Plaintiff,*<br><br>v.<br><br>U-HAUL INTERNATIONAL, INC., and REPUBLIC WESTERN INSURANCE COMPANY,<br><br>*Defendants.* | Docket No. |

# COMPLAINT FOR DECLATORY JUDGMENT

Plaintiff, by and through undersigned counsel, Monte J. Rabner, Esquire, Fred G. Rabner, Esquire, and Rabner Law Offices, P.C., brings this Complaint for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201 and 2202, and avers as follows:

## I.   INTRODUCTION

1. This action seeks a declaration that U-Haul International, Inc. ("U-Haul") and its captive insurer, Republic Western Insurance Company ("RepWest"), cannot invoke the $15,000 "minimum financial responsibility" limit applicable to renters when no valid rental contract ever existed.

2. Darren Martin attempted to rent a U-Haul truck but never paid for it. U-Haul violated its own policies by accepting a facially defective check, failing to verify payment, and releasing a large box truck to Darren Martin anyways.

3. Under Pennsylvania law, a contract without consideration is void from the outset. Martin was therefore not a renter but a permissive user of U-Haul owned truck and/or an agent of U-Haul, entitled to the protection of U-Haul's general liability coverage that is upon information and belief, administered by RepWest.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

5. Plaintiff Jennifer Forsyth is a citizen and resident of Pennsylvania.

6. Defendant U-Haul International, Inc. is an Arizona corporation with its principal place of business in Phoenix, Arizona.

7. Defendant RepWest Insurance Company is an Arizona insurer with its principal place of business in Phoenix, Arizona.

8. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in this District.

9. Plaintiff, as widow and Administratrix of Bertram Forsyth's Estate, has a direct and legally protectable interest in the availability of coverage for Darren Martin's operation of the vehicle.

## III. PARTIES

11. Plaintiff Jennifer Forsyth is the surviving spouse of Bertram Forsyth and duly appointed Administratrix of his Estate.

12. Defendant U-Haul International, Inc. is the titled owner of the U-Haul truck involved in the collision.

13. Defendant RepWest Insurance Company issues, administers, and/or funds the liability insurance coverage maintained by U-Haul for its fleet.

14. RepWest is a wholly owned captive insurer of U-Haul's parent corporation and functions as the insurance arm of the U-Haul enterprise. U-Haul directs and controls RepWest, and both act as one unit for risk and coverage purposes.

## IV. FACTUAL BACKGROUND

15. On December 3, 2022, Darren Martin appeared at the U-Haul Moving & Storage of Center Township at Beaver Valley Mall, Beaver County, Pennsylvania, seeking to obtain a U-Haul box truck.

16. Martin first attempted to pay with a Citizens Bank debit card, which was declined for insufficient funds.

17. U-Haul then allowed Martin to tender a handwritten check drawn on the same account. (See a true and correct copy of Darren Matin's bank statement confirming that the debit card and check were linked to the same account, attached hereto as **Exhibit A**).

18. The check was facially defective: it bore another person's signature, was dated incorrectly, written for the wrong amount, and had an altered memo line. (See a true and correct copy of the purported check that Darren Martin presented to U-Haul, which is attached hereto as **Exhibit B**).

19. U-Haul's own rental *Terms and Conditions* requires that a customer intending to pay by personal check first call the rental location and obtain approval before any vehicle is released. Martin never called. U-Haul's employee ignored that rule and released the truck anyway. (See a true and correct copy of U-Haul's terms and conditions which are attached hereto as **Exhibit C**)

20. U-Haul made no attempt to confirm whether the check would clear. The check was returned "NSF."

21. U-Haul failed to have any check verification system or software in place that would have shown that Darren Martin did not have sufficient funds in his account to make the payment. Alternatively, U-Haul had a check verification system or software in place and failed to utilize it at the time of this rental.

22. Because no valid payment was made, no consideration passed from Martin to U-Haul. Without consideration, there was no contract.

23. Under Pennsylvania law, consideration is an indispensable element of contract formation; a promise unsupported by consideration is void and unenforceable. A check that bounces or a declined debit transaction cannot constitute valid consideration.

24. Here, the issue was not merely a check that later failed to clear, it was the combination of extrinsic red flags that made it unmistakably apparent at the time of transaction that no valid payment existed.

25. U-Haul had actual and constructive notice that Martin lacked funds: his debit card from the very same account had just been declined, and the handwritten check he produced was facially defective, bearing a different signature, wrong amount, the wrong date, and visible alterations. No reasonable business would have accepted such an instrument as payment.

26. The totality of these facts made clear that no valid consideration was ever tendered, and thus no contract was ever formed.

27. U-Haul's violation of its internal check-verification rule compounded the problem. That policy exists precisely to prevent release of vehicles without confirmed payment. By ignoring it, U-Haul directly created the risk that materialized in this case.

28. Because U-Haul voluntarily entrusted the truck to Martin without payment, his possession constituted permissive use, a not rental or lease. (See a true and correct copy of the purported U-Haul equipment contract which indicates that Darren Martin paid $382.98 by check, when in fact no valid payment was tender, which is attached hereto as **Exhibit D**).

29. Under U-Haul's insurance structure, permissive users and/or agents of U-Haul-owned vehicles are insured under the company's general liability policy issued and administered by RepWest. That coverage carries limits far exceeding $15,000.

30. On December 4, 2022, while intoxicated, Martin drove the U-Haul truck south on Route 19 in Cranberry Township. At approximately 2:18 p.m., he ran a red light at Ehrman Road and violently struck Bertram Forsyth's vehicle, killing him instantly.

31. Martin was later charged with Homicide by Vehicle while DUI, Homicide by Vehicle, Involuntary Manslaughter, and related offenses.

32. Plaintiff filed a wrongful-death and survival action against Martin in the Court of Common Pleas of Butler County, docket no. AD-2024-11102.

33. U-Haul and RepWest have asserted that Martin was a "renter" entitled only to $15,000 in coverage under U-Haul's minimum-liability program.

## V. COUNT I – DECLARATORY JUDGMENT

33. Plaintiff incorporates the foregoing paragraphs as if the same were set forth herein at length.

34. An actual, substantial, and justiciable controversy exists regarding the scope and nature of the insurance coverage available for Darren Martin's operation of the U-Haul vehicle involved in the fatal collision of December 4, 2022.

35. Defendants contend that Martin was a "renter" of the U-Haul truck and therefore entitled only to $15,000 in coverage under U-Haul's offered "minimum financial responsibility" for renters.

36. Plaintiff disputes that position. Martin was not a renter, lessee, or customer in any legally cognizable sense. His debit card was declined, and the handwritten check he provided was facially invalid. Without payment, there was no consideration. Without consideration, there was no contract.

37. Under settled Pennsylvania law, consideration is not a formality; it is the foundation of every enforceable agreement. A contract unsupported by consideration is not merely voidable, it is void from the beginning, incapable of creating legal obligations or rights.

38. Here, the absence of consideration was patent and unmistakable. U-Haul possessed both actual and constructive notice that no valid payment had been made.

39. Martin's debit card from the very same account had just been declined, and the handwritten check that followed was clearly defective on its face. No reasonable merchant could have believed that payment was valid.

40. U-Haul's internal documents confirm this conclusion. Its own Terms and Conditions, which purports to govern the rental process, expressly states that U-Haul will not adhere to the rental contract's terms once it determines a breach has occurred.

41. U-Haul cannot have it both ways. It cannot disavow its rental contracts as unenforceable when it suits its business practices, yet claim that the same nonexistent contract limits its insurance exposure. Such inconsistency violates basic principles of contract law, estoppel, and equity.

42. Even assuming *arguendo* that a rental contract once existed, U-Haul's conduct voided it. U-Haul's own policies require customers paying by check to first call the rental location and receive authorization to pay with a check before a vehicle is released. Martin never made that call. U-Haul ignored the rule entirely. Its employee then released the truck despite glaring defects in the payment instrument.

43. By its own language, U-Haul makes payment at the time of rental a prerequisite to the formation of any valid rental agreement. This is not a mere administrative guideline, it is a condition precedent to contract formation.

44. Martin's failure to make payment, coupled with U-Haul's decision to release the vehicle anyway, demonstrates that no valid rental contract ever came into existence under U-Haul's own governing terms.

45. U-Haul cannot selectively disregard that requirement when it suits its convenience and later claim the existence of a contract to limit insurance coverage. Having failed to enforce the very precondition to contract formation that it drafted, U-Haul is estopped from asserting that a rental agreement existed at all.

46. The written *U-Haul Rental Addendum* further confirms that a valid contract could not have existed under these circumstances. The Addendum defines "Customer" as *"the individual(s) entering into the U-Haul Equipment Contract and/or paying for the rental of Equipment."* It expressly provides that payment of all estimated rental charges at the time of rental is mandatory. (See a true and correct copy of the U-Haul Rental Addendum attached hereto as **Exhibit E**).

47. By its own terms, only a person who both executes the rental agreement and pays for the equipment qualifies as a "Customer." Martin did neither. His debit card was declined and

his check was worthless. U-Haul's release of the truck without payment therefore occurred *outside the scope* of its own definition of "Customer" and outside any enforceable "Agreement" under its own terms.

48. The same Addendum restricts operation of U-Haul vehicles to "Authorized Drivers," defined as drivers listed on the Equipment Contract and "authorized by Company to operate a U-Haul Vehicle." Anyone not listed is expressly defined as an "Unauthorized Driver." The Addendum warns that authorizing or permitting an unauthorized individual to operate a vehicle constitutes a *material breach* of the agreement.

49. Because no valid payment was made, no legitimate "Customer" existed, and no Equipment Contract was properly executed, Martin could not have been an "Authorized Driver" within the meaning of U-Haul's own agreement. His operation of the vehicle was therefore *outside* any purported rental contract and within the category of permissive use governed by U-Haul's general liability insurance.

50. In short, U-Haul's own Rental Addendum negates its position: it conditions the existence of any contract on payment at the time of rental, limits coverage to "Authorized Drivers" under that contract, and deems any deviation a "material breach." By accepting no valid payment and releasing the truck anyway, U-Haul acted wholly outside the boundaries of its own agreement and cannot now rely on that same document to cap coverage at $15,000.

51. By violating its own mandatory procedures, U-Haul rendered any purported agreement void as against its internal operating standards and as a matter of public policy. A company cannot profit from a contract that it unilaterally chooses not to honor or enforce according to its own rules.

52. The Graves Amendment, 49 U.S.C. § 30106, provides limited immunity to rental and leasing companies for vicarious liability, but only where a valid rental or lease actually exists. It does not extend to vehicles entrusted gratuitously or outside the scope of a legitimate rental contract. Because U-Haul's purported "rental" was unsupported by consideration and conducted in violation of its own procedures, the Graves Amendment has no application here.

53. Martin's possession and operation of the truck therefore constituted *permissive use*. U-Haul, through its employee, knowingly and affirmatively entrusted the vehicle to him, with full awareness of his lack of valid payment.

54. Martin's possession and operation of the U-Haul truck constituted permissive use as a matter of law. U-Haul, through its employee, knowingly and affirmatively entrusted the vehicle to him, despite clear notice that no valid payment had been made.

55. By releasing the keys and authorizing Martin to drive away, U-Haul gave him both possession and control, the essence of permission under Pennsylvania law.

56. Pennsylvania law recognizes two categories of "permission": express and implied. Express permission arises from a direct authorization; implied permission arises from a pattern of conduct or circumstances indicating consent. Once a vehicle owner voluntarily delivers possession or control of a vehicle, the operator is deemed to have permission for purposes of insurance coverage unless a clear and explicit limitation exists.

57. This principle is codified and reinforced by the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S. §§ 1701–1799.7, which embodies the Commonwealth's strong public policy of ensuring that every vehicle operated on public roads is backed by liability coverage sufficient to protect innocent third parties. Section

1713(a) provides that coverage follows the vehicle first, before any secondary or excess source, reflecting the legislature's intent that the owner's policy extend to *any person lawfully operating the vehicle with the owner's permission.*

58. Pennsylvania's appellate courts have applied that principle. In decisions construing the MVFRL and standard omnibus clauses, the Superior Court and Supreme Court have held that permissive users are included within the scope of the owner's liability coverage. The courts have emphasized that coverage attaches to the vehicle, not the driver, and that insurance "follows the car," ensuring protection to the public regardless of contractual technicalities.

59. Accordingly, once U-Haul delivered the vehicle to Martin without payment and allowed him to operate it, he became a permissive user and/or an agent of U-Haul as a matter of law under the MVFRL and controlling Pennsylvania precedent.

60. In addition to being a permissive user, Martin functioned as U-Haul's *agent* within the meaning of Pennsylvania law. Agency arises when one party acts on behalf of and subject to the control of another. Here, U-Haul's employee exercised complete control over the process by which Martin obtained and operated the truck, determining the vehicle, the time of release, and the documentation, while Martin acted pursuant to that authorization.

61. Under both Pennsylvania law and U-Haul's own general liability policy administered by RepWest, permissive users and agents are insureds unless specifically excluded. No such exclusion applies here.

62. To hold otherwise would contradict the MVFRL's remedial purpose, to protect the motoring public from precisely this type of harm. The law does not permit an owner or its

captive insurer to withhold coverage from an innocent victim simply because the company failed to follow its own payment procedures before handing over the keys.

63. Under Pennsylvania law, a person operates a vehicle with the owner's "permission" when that person has been given possession or control of the vehicle, whether or not a formal contract exists.

64. Courts have consistently held that "permission" may be express or implied, and arises whenever the owner, by word or conduct, allows another to use the vehicle. The scope of such permission is broadly construed in favor of coverage, particularly to protect innocent third parties.

65. Pennsylvania courts have long recognized that once an owner grants possession of a vehicle, even informally, the operator is deemed a permissive user for purposes of liability coverage unless there is a clear, express exclusion.

66. U-Haul's general liability policy, administered by RepWest, is mandated by Pennsylvania law to follow this same principle and extends coverage to permissive users and agents of U-Haul-owned vehicles.

67. Accordingly, Martin's use was permissive both as a matter of law and fact. U-Haul's employee released the keys, transferred control of the truck, and allowed Martin to drive away. That act constituted affirmative permission. The law does not require a signed contract or valid payment to establish permissive use, only the owner's consent, which U-Haul plainly gave.

68. Accordingly, U-Haul's and RepWest's attempt to classify Martin as a "renter" entitled only to minimal statutory coverage is contrary to fact, law, and public policy.

69. Public policy reinforces this result. Pennsylvania's Motor Vehicle Financial Responsibility Law was enacted to ensure that innocent victims receive meaningful compensation for catastrophic injuries and death. Allowing U-Haul to artificially restrict coverage to $15,000 when it failed to collect payment, ignored its own safety protocols, and voluntarily entrusted its vehicle to an unqualified and uninsured driver would defeat the statute's remedial purpose.

70. The law does not tolerate such moral hazard. Corporations cannot escape responsibility for their own procedural failures by reclassifying a non-paying customer as a "renter" after the fact in order to restrict coverage and insulate themselves from the financial consequences of their own negligence.

71. The relationship between U-Haul and RepWest magnifies this problem. RepWest is not an independent insurer issuing coverage at arm's length, it is a wholly owned captive of U-Haul's parent company, created and controlled by the very entity whose negligence gave rise to the loss.

72. In practical effect, U-Haul is both the insured and the insurer, allowing it to decide unilaterally how much compensation victims like the Forsyth family will receive.

73. This structural self-dealing gives U-Haul every incentive to deny coverage, minimize exposure, and manipulate classifications, such as labeling Martin a "renter", to shrink its own payout obligations.

74. Such conduct offends public policy, undermines the remedial purposes of Pennsylvania's financial responsibility laws, and invites precisely the kind of corporate malfeasance that those laws were enacted to prevent.

75. Allowing U-Haul and RepWest to operate as both the gatekeeper and the beneficiary of limited insurance coverage would eviscerate the statutory protections afforded to the motoring public and encourage rental companies to ignore their own safeguards, confident that their captive insurer will shield them from accountability.

76. U-Haul's conduct here reflects more than mere negligence; it is a systematic business practice designed to maximize convenience at the expense of public safety, accepting defective payments, ignoring its own rules, and later relying on technical coverage exclusions to avoid financial accountability.

77. Equity demands that the loss fall where the risk originated, with the party that controlled the vehicle's release, payment protocols, and insurance structure.

78. Plaintiff has standing to bring this declaratory action. As the widow and Administratrix of the Estate of Bertram Forsyth, Plaintiff faces a direct and immediate injury if coverage is wrongfully capped at $15,000. Darren Martin is incarcerated and judgment-proof; the only meaningful recovery for the Estate lies in the insurance available through U-Haul and RepWest.

79. The controversy is immediate, real, and ripe for judicial resolution under 28 U.S.C. § 2201.

80. Plaintiff therefore seeks a declaration from this Court that:
    a. Darren Martin was not a renter or lessee of the U-Haul truck;
    b. Darren Marting was a permissive user of a U-Haul owned vehicle and/or an agent of U-Haul;
    c. U-Haul's general liability insurance affords coverage for Martin's operation of the truck; and

    d. The applicable limits are not restrict to $15,000, but extend to the full limits of U-Haul's general liability policy.

81. Such a declaration will clarify and resolve the parties' rights and obligations, promote the remedial purposes of Pennsylvania's financial responsibility laws, and ensure that the innocent victims of U-Haul's negligence are not left uncompensated due to U-Haul's own disregard of its contractual and procedural duties.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

    A. Declare that Darren Martin was not a renter or lessee of the U-Haul truck;

    B. Declare that Darren Martin was a permissive user of a U-Haul-owned vehicle and/or an agent of U-Haul;

    C. Declare that U-Haul's and RepWest's general liability insurance provides coverage for Martin's operation of the vehicle;

    D. Declare that the coverage is not limited to $15,000 but extends to the full limits of U-Haul's general liability policy; and

    E. Grant such other relief as this Court deems just and proper.

Respectfully Submitted:

*/s/ Monte J. Rabner*

Monte J. Rabner, Esquire
*Counsel for Plaintiff*
PA. ID. 68251

*/s/ Fred G. Rabner*

Fred G. Rabner, Esquire
*Counsel for Plaintiff*
PA. ID. 77337

Rabner Law Offices, P.C.
222 Boulevard of the Allies
2nd Floor
Pittsburgh, PA 15222
Phone: (412) 765-2500
Fax: (412) 765-3900
monte@rabnerlaw.com
fred@rabnerlaw.com