IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER FORSYTH, individually and as Administratrix of the Estate of Bertram Forsyth, <br><br>　　　　Plaintiff, <br><br>　v. <br><br>U-HAUL INTERNATIONAL, INC. and REPUBLIC WESTERN INSURANCE COMPANY, <br><br>　　　　Defendants. | Civil Action No. 25-1541 <br><br> Judge Nora Barry Fischer <br><br> Docket No. 19 |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

Plaintiff, Jennifer Forsyth, is Administratrix of the Estate of her late husband, Bertram Forsyth, who was killed in an automobile accident in Butler County, Pennsylvania on December 4, 2022 when his vehicle was struck by a U-Haul truck driven by Darren Martin, who was intoxicated and driving recklessly. The truck was owned by Defendant U-Haul International, Inc. ("UHI"),[1] and was furnished to Martin by U-Haul Co. of PA ("UHPA") and/or by a U-Haul affiliate operating at the Beaver Valley Mall in Beaver County, Pennsylvania.[2]

---

[1] Defendants assert that the truck was owned by U-Haul Co. of Arizona, an Arizona corporation. (Docket No. 20 at 6, 14).

[2] The Complaint does not identify the purported lessor of the truck, but does recite that Martin obtained the vehicle from U-Haul Moving & Storage of Center Township at Beaver Valley Mall, Beaver County, Pennsylvania. (Docket No. 1 at 3). Defendants assert that Martin rented the vehicle from UHPA. (Docket No. 20 at 6, 7). Although this assertion is *dehors* the Complaint, it is at least partially supported by the Equipment Contract attached as Exhibit D to the Complaint, wherein Martin purportedly "agree[d] to be fully responsible to U-Haul Co. of PA, or their affiliated U-Haul entities and agents" for "charges relating to the rental of the Equipment". (Docket No. 1-4). *But see* Section III(B), *infra*.

In November, 2023 Plaintiff brought an action against UHI and UHPA[3] in the Court of Common Pleas of Butler County, Pennsylvania (the "UHI State Case").  (Docket No. 19-1 at 17).[4] A January, 2024 Second Amended Complaint in the UHI State Case includes negligence and negligent entrustment, vicarious liability, wrongful death and survival claims.  (Docket No. 19-1 at 18-37).  The defendants asserted preliminary objections to Plaintiff's vicarious liability claims based upon the "Graves Amendment", which provides that:

> An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if (1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and (2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).

49 U.S.C. § 30106.  (Docket No. 19-1 at 56-58).  By Order dated April 29, 2024, the court sustained the foregoing objection.  (Docket No. 19-1 at 92).  Accordingly, on June 11, 2024 Plaintiff filed a Third Amended Complaint that omits the vicarious liability count but retains Plaintiffs' other claims.  (Docket No. 19-1 at 95-115).  The UHI State Case remains pending.[5]

---

[3] In addition to UHI and UHPA, Plaintiff included U-Haul Co. of Northwestern Pennsylvania and U-Haul Moving and Storage of Center Township at Beaver Valley Mall as defendants in the Butler Co. Action.  In their brief herein, Defendants characterize the latter two entities as "UHPA . . . incorrectly named"; however, they provide no evidence to support that characterization.  (Docket No. 20 at 7 n.2).

[4] Although the existence and status of the Butler Co. Action are not mentioned in the Complaint, the Court agrees with Defendants that "[c]ourts can take judicial notice of filings in other proceedings." (Docket No. 20 at 8 n.3) (citing *Allen v. State Corr. Inst. at Somerset Dep't of Corr.*, No. 3:23-CV-00262, 2025 WL 964550, at *8 n.15 (W.D. Pa. Mar. 31, 2025)).

[5] On November 22, 2024 Plaintiff commenced an action in the same court against Martin, for negligence, wrongful death and survival.  That action also remains pending.

Some 17 months after the court rejected her claims for vicarious liability in the Butler Co. Action, Plaintiff filed the present action against UHI and its insurer, Defendant RepWest Insurance Co. (f/k/a/ Republic Western Insurance Co.), seeking a declaration that:

a. Darren Martin was not a renter or lessee of the U-Haul truck;
b. Darren Martin was a permissive user of a U-Haul owned vehicle and/or an agent of U-Haul;
c. U-Haul's general liability insurance affords coverage for Martin's operation of the truck; and
d. The applicable limits are not restricted to $15,000, but extend to the full limits of U-Haul's general liability policy.

(Docket No. 1 at 13-14) (typos corrected). Defendants have moved to dismiss Plaintiff's claims for lack of standing, failure to join an indispensable party, failure to state a claim, and prudential abstention grounds. As discussed below, the Court will dismiss this action for failure to state a claim, and will not formally rule upon Defendants' other asserted grounds.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain enough facts to state a claim to relief that is plausible on its face." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3d Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Detailed allegations are not necessary to survive a Rule 12(b)(6) motion to dismiss; however, the complaint must contain "more than labels and conclusions". *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citations omitted).

The United States Court of Appeals for the Third Circuit has instructed the district courts to utilize a three-step process in evaluating a Rule 12(b)(6) motion to dismiss. *See Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327 (3d Cir. 2022). First, the court must set out the elements of the plaintiff's claim; second, identify and disregard any "formulaic recitation of the elements"

or allegations that are "so threadbare or speculative" as to amount to nothing more than mere conclusory statements; and, finally, evaluate "the plausibility of the remaining allegations" by assuming their veracity and "construing them in the light most favorable to the plaintiff[.]" *Id*. at 327-328 (alteration, internal quotation marks, and citations omitted). In addition, courts must draw all reasonable inferences in favor of the plaintiff. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790-791 (3d Cir. 2016).

The ultimate plausibility determination, in turn, is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Connelly*, 809 F.3d at 786–87, quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). As the Third Circuit has repeatedly held, consideration of the "context" for a plausibility determination necessarily includes analysis of the law governing the claim at issue. *See, e.g.*, *Mator v. Wesco Distribution, Inc.*, 102 F.4th 172, 183–84 (3d Cir. 2024) ("When assessing the sufficiency of the complaint, we pay attention to the context of the claim, including the underlying substantive law.") (brackets and internal quotation marks omitted).

### III.    ANALYSIS

Defendants have raised serious questions as to whether Plaintiff has standing to seek a determination of rights and obligations under insurance policies to which she is not a party; whether this action is subject to dismissal for failure to join an indispensable party; and whether this Court should abstain from deciding Plaintiff's declaratory claims due to the pendency of state court actions potentially presenting overlapping issues. For the sake of completeness the Court will briefly address each of those potential grounds for dismissal; but ultimately the Court will decline to rule on those grounds, as it appears to the Court that dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim is clearly warranted (for the reasons set forth below), is

mandatory rather than discretionary or prudential, and is perhaps more useful to the parties because it engages with (rather than avoiding or postponing) the merits of Plaintiff's theories.

### A. Standing

Defendants do not contend that Plaintiff lacks the constitutional standing that is required to have a case or controversy over which this Court may exercise jurisdiction, but rather that as a "third party" to Martin's insurance coverage she lacks "prudential" standing to pursue a declaratory judgment. (Docket No. 20 at 9-10). The "third-party standing doctrine . . . requires that 'the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Potter v. Cozen & O'Connor*, 46 F.4th 148, 154 (3d Cir. 2022), quoting *Franchise Tax Bd. Of Cal. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990). As Defendants acknowledge, a challenge to third-party standing is not jurisdictional, but is analyzed under the rubric of failure to state a claim under Rule 12(b)(6). Docket No. 20 at 10, citing *Potter*, 46 F.4th at 157.

Defendants cite a number of cases from district courts within the Third Circuit, including two authored by judges of this Court, holding that an injured third party lacks standing to seek a declaration as to an alleged tortfeasor's insurance coverage. Docket No. 20 at 11-12, citing, *inter alia*, *Hickey v. Zurich Am. Ins. Co.,* 2019 WL 6037080 at *2 (W.D. Pa. Nov. 14, 2019) (Schwab, J.), *and Alliance of Nonprofit for Risk Retention Grp. v. Transdev, Inc.*, 2019 WL 452492 at *5 (W.D. Pa. Feb. 5, 2019) (Horan, J.). Plaintiff seeks to distinguish these cases on the grounds that (i) she seeks a determination of Martin's status as a renter *vel non*, rather than of his insurance coverage, and (ii) Defendants first raised the issue of Martin's status (by interposing it as a defense

5

to vicarious liability under the Graves Amendment).[6] (Docket No. 26 at 2-3). The Court notes that these distinctions apply only to the first of the four declarations sought by Plaintiff, as the remaining three clearly concern coverage under insurance policies to which Plaintiff is not a party. That said, however, the Court finds it unnecessary to decide whether determination of Martin's renter status implicates Plaintiff's own rights, deeming it more appropriate (for reasons set forth below) to dismiss this action for failure to state a claim rather than for lack of prudential standing.

### B. Indispensable Party

Defendants contend that UHPA is an indispensable party under Fed. R. Civ. P. 19(a) "because it is a party to the Contract with Martin." (Docket No. 20 at 15). In support of this contention, Defendants - who concede that they bear the burden of proving indispensability (Docket No. 20 at 13) - rely solely upon the Equipment Contract attached to the Complaint as Exhibit D. (Docket No. 20 at 15). However, that document does not plainly identify the U-Haul entity that serves as a contracting party. Near the top, opposite the "Customer Name", the form includes the "Renting Location" as "U-Haul Moving & Storage of Center Township at Beaver Valley". Near the bottom, opposite a signature line for "Darren Martin", the form includes a signature line for "U-Haul Signature - (Chris Disney)". (Docket No. 1-4). The sole reference to UHPA occurs in a paragraph in the body of the form, wherein Martin "agree[d] to be fully responsible to U-Haul Co. of PA, or their affiliated U-Haul entities and agents" for "charges relating to the rental of the Equipment". (*Id.*). This language does not specify whether payment is to be made to UHPA or to "their affiliated U-Haul entities and agents". Regardless, a payee is not necessarily a party to the contract; it might function as merely an accommodation party, with

---

[6] In both *Hickey* and *Transdev*, the Court took care to distinguish declaratory claims initiated by an injured third party from cases in which "the insurance company initiated the declaratory action and named the insured and the injured third party as defendants." *Hickey*, supra at *3, quoting *Transdev*, supra at *5.

no substantive interest of its own. Furthermore, the contract addendum (attached to the Complaint as Exhibit E) does not resolve the ambiguity as to the lessor's identity. It provides that the agreement is between the individual entering into the Equipment Contract, and "the local 'U-Haul' Rental Company where the U-Haul Equipment Contract is entered into or an independent U-Haul Rental Company dealer". (Docket No. 1-5). Although Defendants appear to contend that the local U-Haul rental company, U-Haul Moving and Storage of Center Township at Beaver Valley Mall, is merely an alternative name for UHPA, they have not introduced evidence to this effect. *See* n. 3, *supra*. The Court concludes that Defendants have not carried their acknowledged burden to establish that UHPA is an indispensable party.

In their reply brief, Defendants assert for the first time, in cursory fashion, that Martin is also "an indispensable party who[se] . . . joinder would destroy diversity jurisdiction", and whose "absence mandates dismissal". (Docket No. 23 at 5-6). Defendants did not include this ground in their motion to dismiss or supporting brief; nor did they seek leave to amend their motion. Moreover, despite Defendants' assertion that Martin's joinder would destroy diversity jurisdiction, they point to nothing in the record that establishes his citizenship. In consequence, if the Court were to entertain their belated ground, Defendants have not provided the basis on which to determine whether to order Martin's joinder or to dismiss the action.

In an appropriate case the Court might invite supplementation of the record to cure the foregoing deficiencies. But because (for reasons set forth in Section III(D) below) the Court finds Plaintiff's declaratory judgment claims to be lacking in merit, it concludes that the ends of justice and the interests of parties and interested non-parties alike would best be served by disposing of this action under Rule 12(b)(6) rather than Rule 12(b)(7). *Cf.* Fed. R. Civ. P. 1 (the rules "should be construed, administered, and employed . . . to secure the just, speedy, and inexpensive

determination of every action"). In so concluding, the Court notes that the practical effect on all concerned of dismissal under one subsection or the other is effectively the same.

### C. Abstention

Defendants contend that this Court should abstain from exercising jurisdiction over Plaintiff's claims pursuant to *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942), wherein the Court opined that it is "uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." 316 U.S. at 495. If this action were not subject to dismissal for failure to state a claim, the Court would be inclined to abstain. Plaintiff asserts that the specific legal issues presented herein "have not been raised and cannot be raised in the state court actions", and that absent a determination by this Court "that the contract is void and/or that Mr. Martin is an agent of U-Haul, . . . . there is no mechanism by which to raise those questions" in the state court. (Docket No. 21 at 14; *see also* Docket No. 26 at 4). However, Plaintiff has not offered a satisfactory explanation of *why* the issues cannot be raised in the state court[7] (or perhaps more to the point, why they could not have been raised in response to preliminary objections, when the effect of Martin's status as a renter under the Graves Amendment was squarely before that court). Judicial economy may well have been better served by Plaintiff's presenting her current theories to the state court directly, rather than seeking to "materially change" the "litigation of the state court cases" through parallel proceedings in this Court. (Docket No. 21 at 14). Nevertheless, because the abstention inquiry is multifactorial and discretionary, and

---

[7] Even if Plaintiff were correct that her theories "cannot be raised in the state court actions" given "the procedural posture of each case" (Docket No. 21 at 14), that would not entail that she could not have brought her new declaratory action in the state court (where all interested parties could be joined), rather than in this Court (where some of them cannot).

8

because the merits are clear, the Court will dismiss this action for failure to state a claim rather than abstaining.

### D. Failure to State a Claim

As elaborated below, the Court finds each of the declarations requested by Plaintiff to lack sufficient factual and/or legal support to withstand a challenge under Fed. R. Civ. P. 12(b)(6).

1. **Plaintiff has not plausibly supported her claim that Martin was not a renter or lessee of the truck.**

Plaintiff's initial, and principal, contention is that Martin was not a renter of the truck because he failed to make the required rental payment.[8] According to Plaintiff, "[b]ecause no valid payment was made, no consideration passed from Martin to U-Haul", and hence "there was no contract." (Docket No. 1 at 4). Plaintiff further asserts that "[a] contract unsupported by consideration is not merely voidable, it is void from the beginning, incapable of creating legal obligations or rights." (Docket No. 1 at 6).

---

[8] The Court observes that Plaintiff's claim that Martin was not a renter of the U-Haul truck is diametrically opposed to the position she has maintained in the UHI State Case, wherein at least 10 paragraphs of her Third Amended Complaint (which remains pending) unequivocally state that Martin rented the U-Haul vehicle. (Docket No. 19-1 at 99-100, 103-04, 109-10). Moreover, Plaintiff seeks therein to hold UHI and UHPA to specific duties predicated on the rental, including duties to take precautions routinely taken by "others in the rental industry". (Docket No. 19-1 at 104, 106-08). Absent a satisfactory explanation, these inconsistencies could give rise to a possibility that judicial estoppel might be warranted.

> When properly invoked, judicial estoppel bars a litigant from asserting a position that is inconsistent with one he or she previously took before a court or agency. . . . .
>
> Three requirements must be met before a district court may properly apply judicial estoppel. First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. Second, judicial estoppel is unwarranted unless the party changed his or her position in bad faith--i.e., with intent to play fast and loose with the court. Finally, a district court may not employ judicial estoppel unless it is tailored to address the harm identified and no lesser sanction would adequately remedy the damage done by the litigant's misconduct.

*Montrose Medical Group Participating Savings Plan v. Bulger*, 243 F.3d 773, 779 (3d Cir. 2001) (citations and internal quotation marks omitted). Here, the Court is concerned by Plaintiff's bringing a new action before a new court to advance her new theory, while maintaining her irreconcilably inconsistent prior theory in the prior action. That concern is little assuaged by Plaintiff's guarded explanation that her new theory is not relevant to the state court cases "given the[ir] procedural posture", or by her concession that if this Court accepts her new theory, "the litigation of the state court cases will materially change." (Docket No. 21 at 14). That said, in view of its determination that Plaintiff's new theory is untenable on its merits, the Court finds it unnecessary to consider this issue any further.

Plaintiff cites no authority for her sweeping pronouncements about the role of consideration in contract formation under Pennsylvania law.  And although Plaintiff may reasonably assume that the requirement of consideration is so well established as to need no case reference, it is equally a matter of "black letter" law that the requisite consideration may be supplied by a return promise, rather than by payment or other performance.  *See, e.g.*, *Corsale v. Sperian Energy Corp.*, 374 F. Supp. 3d 445, 453 (W.D. Pa. 2019) ("Consideration . . . is often formed by mutual promises"), citing *Bethlehem Area Sch. Dist. v. Zhou*, 2012 U.S. Dist. LEXIS 37313, at *6 (E.D. Pa. Mar. 19, 2012) ("It is a general principle of contract law that mutual promises are valid consideration.").  *Cf. Cardamone v. University of Pittsburgh*, 384 A.2d 1228, 1232 n.6 (Pa. Super. 1978) ("Valid 'consideration' confers a benefit upon the promisor or causes a detriment to the promisee and must be an act, forbearance or return promise bargained for and given in exchange for the original promise.").

Here, as set forth in the Equipment Contract attached to the Complaint, Martin expressly agreed, *inter alia*, "to be fully responsible" for various enumerated "charges relating to the rental of the Equipment" (including "rental charges" and "mileage fees" amounting to an estimated $139.65 and $99.00, respectively).  (Docket No. 1-4).[9]  This agreement to pay was plainly a *quid pro quo* for U-Haul's agreement to furnish the rental vehicle, and thus constituted valid consideration for the formation of an enforceable rental contract under Pennsylvania law.

---

[9] In paras. 46-47 of the Complaint, Plaintiff asserts that an Addendum attached to the Complaint "defines 'Customer' as 'the individual(s) entering into the U-Haul Equipment Contract and/or paying for the rental of Equipment'", and that therefore "only a person who both executes the rental agreement and pays for the equipment qualifies as a 'Customer.'  Martin did neither."  While this isolated statement might be read to allege that Martin did not execute the Equipment Contract, given that (i) Plaintiff attached to her Complaint a form purporting to bear Martin's signature, describing it as "a true and correct copy of the purported U-Haul equipment contract", without indicating that the signature thereon was forged, and (ii) Plaintiff has challenged the enforceability of the rental agreement solely for asserted lack of consideration, rather than lack of assent, the Court will deem the statement that "Martin did neither" to be hyperbolic or inadvertent, rather than to constitute a serious allegation that Martin did not sign the form. (Docket No. 1 at 5; Docket No. 1-5).

Plaintiff further contends that "assuming *arguendo* that a rental contract once existed, U-Haul's conduct voided it." (Docket No. 1 at 7). In particular, Plaintiff alleges that U-Haul ignored "its own policies requir[ing] customers paying by check to first call the rental location and receive authorization to pay with a check before a vehicle is released." (*Id.*). Plaintiff concludes that "[b]y its own language, U-Haul makes payment at the time of rental a prerequisite to the formation of any valid rental agreement. This is not a mere administrative guideline, it is a condition precedent to contract formation." However, the actual language in question does not support Plaintiff's contention that failure to pre-authorize payment by check renders a rental contract void or precludes its formation. (*Id.*).

The provision Plaintiff refers to appears in the U-Haul Equipment Reservation Terms and Conditions, attached to the Complaint as Exhibit C. It reads: "In the event Customer would like to pay via check, Customer should contact the dispatching U-Haul rental location prior to creating a reservation." (Docket No. 1-3 at 2). On its face, this language is advisory ("should"), rather than mandatory (e.g., "must"). Moreover, nothing in the quoted provision (or elsewhere in the contract documents) indicates that advance authorization is required in order for a Customer to pay by check.

Even if the dishonor of Martin's check was foreseeable (or even "unmistakably apparent", as Plaintiff alleges) (Docket No. 1 at 4), that would not deprive U-Haul's rental agreement of legally cognizable consideration. Plaintiff's assertion (again without citation to authority) that "[a] check that bounces . . . cannot constitute valid consideration" (*id.*) is simply incorrect, as the drawer of a dishonored check is obliged under 13 Pa. C.S. Sec. 3414(b) to pay the check "according to its terms at the time it was issued", and this obligation amounts to a detriment incurred in exchange for the lessor's undertaking to provide a truck. Rather than rendering the rental contract void *ab*

*initio* for **lack** of consideration, the subsequent dishonor is a **failure** of consideration, which amounts to breach rather than annihilation of the agreement.[10]

### 2. **Plaintiff has not plausibly supported her claim that Martin was a permissive user of the truck or an agent of UHI.**

The essence of Plaintiff's claim that Martin was a permissive user is that "[b]ecause U-Haul voluntarily entrusted the truck to Martin without payment, his possession constituted permissive use, a[nd] not rental or lease." (Docket No. 1 at 5). *See also id.* at 9 ("Martin's possession and operation of the U-Haul truck constituted permissive use as a matter of law. U-Haul, through its employee, knowingly and affirmatively entrusted the vehicle to him, despite clear notice that no valid payment had been made"). However, the Complaint does not allege facts sufficient to support a conclusion that UHI actually authorized use of its truck without payment.

Under Pennsylvania law, permissive user status turns on a manifestation of the owner's (or other named insured's) consent to the use at issue:

> [T]he critical question will always be whether the named insured said or did something that warranted the belief that the ensuing use was with his consent. There must be "a connection made" with the named insured's own conduct; proof of "acts, circumstances, and facts, such as the continued use of the car", will be insufficient "unless they attach themselves in some way to the acts" of the named insured.

---

[10] As the United States Supreme Court has explained,

> When the consideration for a contract fails—that is, when one of the exchanged promises is not kept—we do not say that the voluntary bilateral consent to the contract never existed, so that it is automatically and utterly void; we say that the contract was broken.

*Puckett v. United States*, 556 U.S. 129, 137 (2009), citing See 23 Williston on Contracts § 63.1 (4th ed. 2002). This distinction is borne out in the treatment of bounced checks under U-Haul's Additional Terms & Conditions for Equipment Rental (Exhibit E to the Complaint): "If Customer's check is returned unpaid due to insufficient or uncollected funds, Company may present it electronically." (Docket No. 1-5 at 1). Of course, inclusion of a contractual remedy would make no sense if the unpaid check made the contract void.

*Belas v. Melanovich*, 372 A.2d 478, 484 (Pa. Super. 1977) (quoting *Beatty v. Hoff*, 114 A.2d 173, 174 (Pa. 1955)). *See also, e.g.*, Nationwide Mut. Ins. Co. v. Cummings, 652 A.2d 1338, 1342 (Pa. Super. 1994) (quoting *Belas*); State Farm Mut. Auto. Ins. Co. v. Feather, No. 1:15-CV-197, at *5 (M.D. Pa. Apr. 26, 2017) (same).

Applying this standard to the present case, the Complaint does not allege any such permitting conduct on UHI's part. Plaintiff's apparent reference to the actions of the U-Haul representative at the Beaver Valley Mall location as those of "U-Haul, through its employee," is insufficient. As used in the Complaint, "U-Haul" is defined to mean Defendant U-Haul International, Inc. (Docket No. 1 at 1). The Court finds any implicit allegation that a U-Haul representative at a mall in Pennsylvania is an employee of UNI to be implausible.

To the contrary, the Complaint discloses facts which appear to compel a conclusion that UHI did ***not*** consent to Martin's use of its vehicle without payment. *See, e.g.* Docket No. 21 at 10-11 ("standards governing payment verification, contract formation, and vehicle release . . . established at the U-Haul International level and implemented uniformly across locations . . . . were violated", as release of the vehicle to Martin "despite obvious indicators, at the time of the transaction, that no valid payment existed" was "contrary to internal procedures designed to prevent precisely that outcome"); *id.* at 4 ("U-Haul's . . . internal check-verification rule . . . . . exists precisely to prevent release of vehicles without confirmed payment."). Considering the entire Complaint in the light most favorable to Plaintiff, the Court finds no plausible support for a conclusion that UHI consented to the local representative's release of the truck to Martin in violation of UHI's standards and policies.

Moreover, the contract documents herein explicitly limit who is "authorized" (*i.e.*, permitted) to drive U-Haul's truck: "only an individual listed on the U-Haul Equipment Contract

13

as an Authorized Driver is authorized by the Company to drive a U-Haul vehicle." (Docket No. 1-5 at 2). In keeping with this provision, Plaintiff acknowledges that U-Haul's contract addendum "restricts operation of U-Haul vehicles to 'Authorized Drivers'". (Docket No. 1 at 8). However, as Plaintiff further concedes, acceptance of Plaintiff's position that Martin's nonpayment vitiates the rental contract would entail that Martin could not qualify as an Authorized Driver: "Because no valid payment was made, no legitimate 'Customer' existed, and no Equipment Contract was properly executed, Martin could not have been an 'Authorized Driver' within the meaning of U-Haul's own agreement." (*Id.*). The unavoidable conclusion is that Martin can only have been permitted to use the U-Haul truck as an Authorized Driver under U-Haul's rental agreement, and not in any other capacity.[11]

Plaintiff's contention that Martin was an agent of UHI fares no better. According to Plaintiff:

> Martin functioned as U-Haul's agent within the meaning of Pennsylvania law. Agency arises when one party acts on behalf of and subject to the control of another. Here, U-Haul's employee exercised complete control over the process by which Martin obtained and operated the truck, determining the vehicle, the time of release, and the documentation, while Martin acted pursuant to that authorization.

(Docket No. 1 at 10). Although this passage sufficiently alleges that a U-Haul representative[12] controlled "the process by which Martin obtained . . . the truck", it provides no meaningful support for the conclusory allegation that U-Haul also controlled "the process by which Martin . . . operated the truck". More importantly, nothing in the foregoing passage (or elsewhere in the

---

[11] An owner's express limitations on permission to use a vehicle are binding under Pennsylvania insurance law. *See Helwig v. Esterly*, 208 A.2d 10, 12 (Pa. Super. 1965), *quoted in Belas*, 372 A.2d at 484 (where father loaned car to son with instruction that son alone could drive it, use by son's fiancée, even for purpose within father's intent, was not permissive use under father's insurance policy, because "[i]t would be unreasonable to hold that [the son] was privileged to disregard the explicit instruction of his father as to the manner in which he was to use his father's car").

[12] As discussed above, the Court does not credit Plaintiff's characterization of the local U-Haul representative at the Beaver Valley Mall as "[UHI's] employee".

Complaint) indicates that Martin ever acted on behalf of UHI (as Plaintiff acknowledges was required for an agency relationship to arise). This omission is fatal to Plaintiff's claim that Martin was UHI's agent.

"The basic elements of agency are the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." *Bradney v. Sakelson*, 473 A.2d 189, 191 (Pa. Super. 1984) (quoting Restatement (Second) of Agency, § 1, Comment b (1958)). In the present case there is no allegation that either UHI or Martin manifested an intent that the latter would act for the former.

Going into greater depth, the Pennsylvania Superior Court has explained the requisites for creation of an agency relationship under Pennsylvania law:

> An agency relationship may be created by any of the following: (1) express authority, (2) implied authority, (3) apparent authority, and/or (4) authority by estoppel. Express authority exists where the principal deliberately and specifically grants authority to the agent as to certain matters. Implied authority exists in situations where the agent's actions are "proper, usual and necessary" to carry out express agency. Apparent agency exists where the principal, by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act. Authority by estoppel occurs when the principal fails to take reasonable steps to disavow the third party of their belief that the purported agent was authorized to act on behalf of the principal.

*Walton v. Johnson*, 66 A.3d 782, 786 (Pa. Super. 2013) (citations omitted). The foregoing passage makes clear that each means of creating agency requires specific conduct on the part of the principal that either grants, or appears to acknowledge, authority for the agent to act on the principal's behalf. In the present case, Plaintiff has alleged no such conduct on the part of UHI.[13]

---

[13] Finally, putting to one side the parsing of the specific requisites for permissive user or agency status under Pennsylvania law, the Court observes that more generally it is quite implausible that an entity like UHI, whose core business involves management and rental of a great number of vehicles through an extensive network of affiliates,

15

Accordingly, Plaintiff has not stated a plausible claim that Martin was a permissive user or an agent of UHI.

3. **Plaintiff has not plausibly supported her claim that UHI's general liability insurance affords coverage for Martin's operation of the truck.**

Plaintiff next seeks a declaration to the effect that Martin's operation of the U-Haul truck was covered under UHI's general liability insurance policy. Plaintiff is not entitled to such a declaration, for three reasons.

First, Plaintiff's claim of coverage is predicated on her antecedent claim that Martin was a permissive user or an agent of UHI. The Court's rejection of the antecedent status claim therefore entails rejection of the consequent coverage claim as well.

Second, Plaintiff has not alleged facts sufficient to state a plausible claim for coverage. The relevant averments in the Complaint amount to these:

> Under U-Haul's insurance structure, permissive users and/or agents of U-Haul-owned vehicles are insured under the company's general liability policy issued and administered by RepWest.
> . . . .
> Under . . . U-Haul's own general liability policy administered by RepWest, permissive users and agents are insureds unless specifically excluded. No such exclusion applies here.

(Docket No. 1 at 5, 10). Whether particular classes of persons are insured under a policy, and whether particular classes of claims are excluded from coverage, can only be determined by examining the language of the policy in question. *See, e.g.*, *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 735 A.2d 100, 106 (1999) ("The polestar of our inquiry . . . is the language of the insurance policy."). Here, Plaintiff has not supplied any policy language to support

---

would so arrange its affairs as to permit financially irresponsible would-be renters to use its equipment without a contract, or to constitute such persons as its agents.

her conclusory allegations of coverage. If Plaintiff cannot attach UHI's policy, or quote from it, or even paraphrase pertinent provisions, it is difficult to conceive of what evidentiary support her contentions may have.[14] The Court finds Plaintiff's allegations as to coverage to be too threadbare, speculative and conclusory to state a claim upon which relief may be granted.

Third, the Court observes that coverage like that alleged by Plaintiff would be highly unusual. The widely used "standard" commercial general liability ("CGL") insurance policy form, propounded by the Insurance Services Office,[15] provides coverage for the named corporate insured and its officers, directors, shareholders, employees and volunteer workers (for conduct or liability in such capacities). *See* ISO CG 00 01 (Ed. 04/13) at 9-10.[16] It does not by its terms cover agents, or permissive users of corporate-owned vehicles or other personalty. *See id.* Notably, the standard CGL policy expressly excludes coverage for any bodily injury (including death) arising out of the use of a motor vehicle owned or operated by an insured. *See id.* at 4, 13. *See also*, *e.g.*, *Middlesex Mut. Assur. Co. v. Fish*, 738 F.Supp.2d 124, 132 (D. Me. 2010) ("As a rule, a CGL policy excludes risks associated with owning and operating a motor vehicle".). *See generally* 9 Couch on Ins. § 127:34 ("commercial general liability (CGL) . . . policies generally exclude liability for damages arising out of the ownership . . . [or] use . . . of a motor vehicle"); *id.* at n.1 (collecting cases); C. Stanovich, *The Auto Exclusion in the CGL Policy* (Sep. 1, 2022), available at https://www.irmi.com/articles/expert-commentary/the-auto-exclusion-in-the-cgl-

---

[14] *Cf.* Fed. R. Civ. P. 11 (b)(3).

[15]    Insurance Services Office, Inc. (ISO), an association of approximately 1,400 domestic property and casualty insurers . . . , is the almost exclusive source of support services in this country for CGL insurance. ISO develops standard policy forms and files or lodges them with each State's insurance regulators; most CGL insurance written in the United States is written on these forms.

*Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 772 (1993) (citations omitted).

[16] A specimen of this form is available online at https://coniferinsurance.com/wp-content/uploads/2024/07/Michigan-Hospitality-Liability-Forms.pdf (last accessed Jan. 29, 2026).

policy (last accessed Jan. 29, 2026).  Although nothing in the record indicates that UHI has a CGL policy modeled on the ISO form, the Court further notes Plaintiff's allegations that UHI is "[i]n practical effect . . . both the insured and the insurer," with "every incentive to deny coverage, minimize exposure, and manipulate classifications . . . , to shrink its own payout obligations."  (Docket No. 1 at 12).  It strikes the Court as highly implausible that an effectively self-insured corporation with such incentives would adopt policy language that gratuitously provides defaulting customers with coverage greatly in excess of that provided to regular renters.

In sum, the Court finds that Plaintiff has not made out a plausible case that Martin's operation of the truck was covered under UHI's CGL policy.

4. **Plaintiff has not plausibly supported her claim that coverage for Martin's operation of the truck extends to the full limits of UHI's general liability policy.**

Plaintiff's fourth declaratory claim may be disposed of very simply:  Since the Court has found that the Complaint does not state a plausible claim that Martin was covered under UHI's CGL policy, it follows that it also does not state a plausible claim that he was covered up to the "full limits" of that policy (whatever those limits might be).

IV. **CONCLUSION**

For the abovesaid reasons, the Court will dismiss this action pursuant to Rule 12(b)(6) for failure to state a claim, and will decline to rule on the other grounds for dismissal asserted by Defendants.  An appropriate Order follows.

*/s/ Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated: February 4, 2026

cc/ecf:  All counsel of record